O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BILLIE JO FLORES,<br><br>               Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>               Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. EDCV 10-01205-OP<br><br>MEMORANDUM OPINION AND ORDER |

       The Court[1] now rules as follows with respect to the three disputed issues listed in the Joint Stipulation ("JS").[2]

---

    [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before United States Magistrate Judge Oswald Parada in the instant action. (See Dkt. Nos. 8, 9.)

    [2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR") and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

## I.
## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered lay witness statements;

(2) Whether the ALJ properly considered the treating psychiatrist's opinions; and

(3) Whether the ALJ properly considered the side effects of Plaintiff's medications.

(JS at 2.)

## II.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

## III.

## DISCUSSION

**A.  The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of obesity; uncontrolled diabetes mellitus II with parasthesias of the upper and lower extremities; HCV infection; mood disorder NOS, with bipolar features, psychological reactions to physical conditions; and mixed substance abuse in reported remission. (AR at 11.) The ALJ found that Plaintiff's medically determinable impairments of hypertension and headaches do not cause more than minimal limitation in her ability to perform basic work activities, and therefore are non-severe. (Id.)

The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: stand/walk four hours in an eight-hour workday; sit eight hours in an eight-hour workday with normal breaks every two hours; lift/carry twenty pounds occasionally, ten pounds frequently; no climbing ladders, working at heights, or balancing; work environment should be air conditioned; moderate complex tasks, four and five step instructions; relatively habituated setting, precluded from highly fast-paced work; precluded from safety operations that require hyper-vigilance; and no work with the public. (Id. at 13.)

Relying on the testimony of the vocational expert ("VE") to determine the extent to which Plaintiff's limitations eroded the light occupational base, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (Id. at 17.) Based on the testimony of the VE, the ALJ determined Plaintiff could perform the requirements of such light work as Sewing Machine Operator (Dictionary of Occupational Titles ("DOT") 786.685-030), and sedentary work such as para-mutual ticket checker (DOT 219.587-010). (Id.)

B.  **If the ALJ's Failure to Mention the Lay Witness Statement Was Error, the Error Was Harmless.**

Plaintiff claims that the ALJ erred in ignoring the Third Party Function Report completed by Plaintiff's boyfriend, John Florez. (JS at 3-4, 5-6.)

Florez reported in a February 17, 2008, Third Party Function Report that Plaintiff is able to wake her children for school, give her sons their medication for Attention Deficit Hyperactivity Disorder, and help the children with their homework. (AR at 156.) She is able to take care of most of her personal hygiene and is able to do dishes, sweep, and vacuum. (Id. at 157, 158-59.) Plaintiff is able to drive and complete household shopping. (Id. at 159, 160.) According to Florez, Plaintiff is able to walk for thirty minutes before she needs to rest. (Id. at 161.) Florez also reported that Plaintiff is depressed and angry. (Id. at 157.) She no longer plays with her children, becomes mean and screams, and is unable to get along with others. (Id. at 157, 161.) Florez indicated that he must remind Plaintiff to take a shower and brush her teeth, and encourage her to get up to attend doctors' appointments. (Id. at 158.) He also must help Plaintiff put on her shirts and socks, and wash her backside. (Id. at 157.) Florez stated that Plaintiff cannot lift anything heavy, cannot reach with her right arm, has difficulty following written and spoken instructions, cannot pay attention for extended periods, cannot handle changes in her routine, and does not like to listen to others. (Id. at 161-62.)

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [her] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).

This applies equally to the sworn hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn statements and letters of friends and relatives. See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000). If the ALJ chooses to *reject* such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467. The ALJ must provide "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ's failure to address lay witness testimony generally is not harmless. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991). In failing to address a lay witness statement, the error is harmless only if "a reviewing court . . . can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).

Here, the ALJ failed to mention the Function Report completed by Plaintiff's boyfriend. A review of that report, however, demonstrates that it is not inconsistent with the ALJ's findings and, therefore, it is not at all clear that the ALJ actually rejected this evidence. Accordingly, there was no need for the ALJ to discuss this evidence.

For instance, Mr. Florez's statement that Plaintiff is depressed, performs only some household chores, does not get along well with others, and does not handle changes in routine are reflected in the ALJ's findings that Plaintiff has a mood disorder, should be limited to habituated work, is precluded from fast-paced work, and should not work with the public. His statement that Plaintiff has difficulty following written and spoken instructions, is reflected in the ALJ's limiting Plaintiff to moderate complex tasks with only four and five step instructions. Likewise, Florez's statement that Plaintiff has difficulty lifting is reflected in the ALJ's limiting Plaintiff to lifting no more than ten pounds

frequently, twenty pounds occasionally.

However, even if the ALJ's failure to address the opinions of Plaintiff's boyfriend was error, the error is harmless because no reasonable ALJ would have reached a different disability determination having considered it. Stout, 454 F.3d at 1056; Robbins, 466 F.3d at 885. This is because the opinions of Plaintiff's boyfriend mirrored the subjective complaints of Plaintiff, which were properly rejected by the ALJ, as discussed in part below. (See Discussion Part III.C.) Accordingly, the Court finds that even if this testimony was fully considered, no reasonable ALJ could have reached a different disability determination. Thus, any error was harmless.

## C. The ALJ Properly Considered the Opinions of the Treating Psychiatrist.

Plaintiff claims that the ALJ failed to properly consider the opinions of her treating psychiatrist, Donna Barrozo, M.D. (JS at 6-7, 9-10.) The Court disagrees.

According to the record, Plaintiff first presented to the San Bernardino County Department of Behavioral Health on February 6, 2008. At that time, the intake clinician, Liticia Lindo, R.N./MS, assessed a Global Assessment of Functioning ("GAF") score of 50.[3] (AR at 312.) Plaintiff was then under the care of Dr. Barrozo specifically, from March 12, 2008, to at least July 23, 2009.

---

[3] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 ("DSM-IV") (4th Ed. 2000). A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34.

6

(Id. at 292-306, 313-14.) In her first treatment note on March 12, 2008, Dr. Barrozo suggested a diagnosis of depressive disorder, rule out bipolar disorder, and noted that Plaintiff's GAF score was 50. (Id. at 306.) On March 21, 2008, Dr. Barrozo confirmed an Axis I diagnosis of bipolar disorder, NOS, and again noted a GAF score of 50. (Id. at 305.)

In these and other notes, Dr. Barrozo noted Plaintiff's fluctuating mood, fair to poor insight, fair to poor judgment (id.), dysphoria (id. at 303, 314), and blunted affect (id. at 301, 314). She made frequent adjustments to Plaintiff's medications (see, e.g., id. at 313-14), and at different times Plaintiff reported decreased crying spells and irritability (id. at 301), a decrease in hallucinations and anger (id. at 296), and later that her symptoms had improved (id. at 295).

In denying Plaintiff's application, the ALJ discussed Dr. Barrozo's findings along with the findings of other physicians, as background for her determination of whether Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain and other symptoms were supported after the ALJ's consideration of the entire case record. (Id. at 14.) In that respect, the ALJ noted Dr. Barrozo's findings:

> Donna Barrozo, M.D., from San Bernardino County Mental Health saw the claimant on March 21, 2008, for complaints of frequent mood swings. Claimant reported getting frustrated easily, irritable towards people, history of postpartum depression, and physical abuse by ex-husband. On mental status exam claimant's mood/affect were angry/irritable and at times less fluctuating. Insight/judgment was fair to poor. The diagnosis was bipolar disorder NOS. Claimant had a GAF (global assessment of function) of fifty.

(Id. (citation omitted).)

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed

7

to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957 (citation and quotation omitted).

Noting that the ALJ did not expressly accept or reject Dr. Barrozo's findings, Plaintiff argues, therefore, that the ALJ should have articulated specific and legitimate reasons for not accepting the GAF of 50 as assessed by Dr. Barrozo. (JS at 6, 7.) However, an ALJ is not required to "discuss every piece of evidence" so long as the decision was supported by substantial evidence. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Rather, the ALJ need only explain why "significant probative evidence *has been rejected*." Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393 (9th Cir. 1984) (emphasis added).

Further, GAF scores reflect the "clinician's judgment of the individual's

overall level of functioning." DSM-IV at 32. They encompass "psychological, social and occupational functioning," but are not meant to be a conclusive medical assessment of overall functioning, but rather, are only intended to be "useful in planning treatment[,] . . . measuring its impact, and in predicting outcome." Id. The Social Security regulations do not require an ALJ to take the GAF score into account in determining the extent of an individual's disability; while the score may help the ALJ assess the claimant's disability, it is not essential and the ALJ's failure to rely on the GAF does not constitute an improper application of the law. Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (while a GAF score may be of considerable help to the ALJ, it is not essential; the ALJ's failure to reference the GAF score, standing alone, does not make the ALJ's findings inaccurate).

Nor was Plaintiff's GAF score essential to the accuracy of the RFC found by the ALJ. The assessed GAF score was a "snapshot" assessment of Plaintiff's condition at the time she presented to the clinic and after first being seen by Dr. Barrozo, and was based primarily on Plaintiff's self-reports. (See, e.g., AR at 306.) The longitudinal evidence, including later treatment records from Dr. Barrozo indicates Plaintiff's continued improvement with medication and treatment and is not inconsistent with the ALJ's RFC findings. Accordingly, since the ALJ is not required to take the GAF score into account in determining disability or even to mention it, the ALJ's failure to make further mention of Dr. Barrozo's GAF assessment was not error.

Moreover, the Court is not persuaded that the ALJ's failure to further mention Plaintiff's GAF score equates with a rejection of Dr. Barrozo's opinions. In fact, in considering Dr. Barrozo's opinion, together with other medical opinions in making her determination as to whether Plaintiff's subjective complaints were supported by the record, the ALJ appears to adopt,

9

not reject, Dr. Barrozo's findings.[4]

Based on the foregoing, the Court finds that the ALJ did not err in failing to provide specific and legitimate reasons for rejecting Dr. Barrozo's opinion, specifically her GAF score, as she did not in fact reject that opinion, and even if there was error, it was harmless. Curry, 925 F.2d at 1131 (harmless error rule applies to review of administrative decisions regarding disability).

## D. The ALJ Did Not Improperly Neglect to Consider Side Effects of Plaintiff's Medications.

Plaintiff complains that the ALJ failed to give proper consideration to the "type, dosage, effectiveness, and side effects of any medications," or to give proper consideration to whether the repeated increases in Plaintiff's medication amounted to "episodes of decompensation" with respect to Listing 12.00. (JS at 10-11, 14.) The Court disagrees.

### 1. Side Effects.

Under Ninth Circuit law, the ALJ must "consider *all* factors that might have a 'significant impact on an individual's ability to work.'" Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993) (quoting Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988)). Such factors "may include side effects of medications as well as subjective evidence of pain." Id. at 818. When the ALJ disregards the claimant's testimony as to subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medications. See Varney, 846 F.2d at 545; see also Muhammed v. Apfel, No. C 98-02952 CRB, 1999 WL 260974, at *6 (N.D. Cal. 1999).

---

[4] Plaintiff does not contend the ALJ failed to properly assess her credibility.

In this case, there was no indication in the medical records that Plaintiff reported any side effects from her medications, other than an upset stomach from the Abilify which caused Dr. Barrozo to discontinue the medication and prescribe Haldol instead. (AR at 300.) In fact, Plaintiff does not even attempt to argue that the record contains evidence that she suffered from any of the listed side effects. Rather, she simply relies on the fact that she was prescribed various medications and at times had the dose increased as support for her argument that the ALJ was required to consider potential side effects merely because the medications were known to cause some adverse reactions.

In the absence of evidence that Plaintiff actually suffered from side effects of medication, there was no error in the ALJ's failure to mention the potential side effects. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in failing to "explicitly address the drowsiness side-effect of [the claimant's] medication" in making an RFC determination as "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints"); Thomas, 278 F.3d at 960 (alleged side effects need not be considered where no objective evidence supported allegations).

**2.  Episodes of Decompensation.**

Episodes of decompensation are defined by Listing 12.00(c)(4) as follows:

> Episodes of decompensation are exacerbations of temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace . . . . Episodes of decompensation may be inferred from medical records showing significant alteration in medication; . . . or other relevant information in the record about

the existence, severity, and duration of the episode. 20 C.F.R. § 404, Subpart. P, App. 1, § 12.00(C)(4). Further, in order to establish a Listing Level severity of mental impairment, the evidence must establish that Plaintiff experienced "repeated episodes of decompensation, each of extended duration." (Id.; see also id. §§ 12.01-12.10.) This means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. Id. § 12.00(C)(4).

There is no evidence in the record to show that Plaintiff experienced any such episodes of decompensation. The State Agency physician who reviewed the evidence and completed a Psychiatric Review Technique specifically found no episodes of decompensation. (AR at 265.) In fact, on some dates when Dr. Barrozo increased the dosage of Plaintiff's medication, Plaintiff had reported improved, although persistent, symptoms. (Id. at 296, 301, 313-14.) Rather than evidencing decompensation, it is apparent from the record that the increase in the dosage of Plaintiff's medication was routine medication management in an attempt to provide Plaintiff with continued improvement in her symptoms. See Rogers v. Astrue, No. EDCV 09-584-JC, 2010 WL 3749286, at *6 (C.D. Cal. Sept. 21, 2010); Maestas v. Astrue, No. EDCV 09-487-MAN, 2010 WL 3199270, at *5 (C.D. Cal. Aug. 10, 2010); Tarver v. Astrue, No. EDCV 08-1416-MLG, 2009 WL 2711888, at *5-6 (C.D. Cal. Aug. 25, 2009).

///
///
///
///
///
///
///

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: April 6, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge

— 
removed